**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 13 |
| | ) | Case No. 11-42485-MSH |
| KELLY REHMAN | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER ON DEBTOR'S OMNIBUS**
**OBJECTION TO CLAIMS**

Ms. Rehman, who filed her chapter 13 petition commencing this case on June 9,

2011, seeks by an omnibus objection the disallowance of 13 out of the 15 proofs of claim

for unsecured debts filed by creditors in her case. The two unsecured proofs of claim not

objected to were for the unsecured portion of federal and state income taxes owed to the

Internal Revenue Service and the Massachusetts Department of Revenue.

On schedule F accompanying her chapter 13 petition (creditors holding unsecured

nonpriority claims), Ms. Rehman listed 18 creditors holding general unsecured claims

totaling $69,404.96. Apart from a service contract indebtedness on her 2007 Cadillac

Escalade of $2555, a water and sewer obligation to the Town of Andover, Massachusetts

of $1122.37 and a dental bill of $1213.84, all the unsecured debts listed on schedule F

arose from credit card or retail installment purchases. Except for the debt to her dentist,

Ms. Rehman listed every unsecured debt on schedule F as disputed.

In her omnibus objection, Ms. Rehman alleged as grounds for each objection the

creditor's failure to comply with Rule 3001(c)(1) and (c)(2)(A) of the Federal Rules of

Bankruptcy Procedure which require proofs of claim to be accompanied by certain

1

supporting documentation.[1] In 7 out of 13 objections she also alleged the creditors'

failure to provide evidence of standing.

The only opposition to the debtor's omnibus claim objection was filed by eCAST

Settlement Corporation with respect to claims #14 and #15. In its opposition, eCAST

pointed out that Rule 3001(c)(2)(A) was added to the Federal Rules of Bankruptcy

Procedure in 2011 and applies only to cases filed after December 1, 2011 and that Ms.

Rehman's bankruptcy case was filed in June 2011. eCast also noted that on her schedule

F, Ms. Rehman listed the indebtedness in the identical amounts and with the identical

account numbers as set forth in eCAST's proofs of claim, but rather than listing eCAST

as the creditor on schedule F, Ms. Rehman listed eCAST's assignor, Citibank, as the

creditor. eCAST had attached to its proofs of claim copies of bills of sale and

assignments from Citibank as well as account summaries.

At a hearing on June 19, 2012, I overruled Ms. Rehman's objection to eCAST's

claims and in the process ruled that Ms. Rehman's bankruptcy case is governed by the

version of Rule 3001 in effect prior to the 2011 amendments and that, therefore, Ms.

Rehman's creditors were not obligated to include with their proofs of claim the

documents required by Rule 3001(c)(2)(A).[2] I also referred Ms. Rehman's counsel to my

orders in other cases overruling debtors' objections to claims by assignees where the

debtors had scheduled the very same claims but in the names of the original claim holders

so long as the assignees provided some evidence of the assignments. *In re Gauthier*, 459

---

[1] Her objection to claim #3 of Dell Financial Services raised only Rule 3001(c)(2)(A).
[2] In a subsequent pleading, Debtor's counsel has noted that in its order approving the amendments to Rule
3001 the United States Supreme Court decreed that the amendments would take effect on December 1,
2011 and apply to cases thereafter commenced and, insofar as just and practicable, to all proceedings then
pending. I find that in the instant case, which was commenced on June 9, 2011 with a bar date for filing
proofs of claim of October 18, 2011, to hold creditors to the amended Rule 3001 requirements would be
both unjust and impractical.

B.R. 526, 527. (Bankr. D. Mass. 2011). Ms. Rehman's counsel pointed out that in those

cases the debtors had listed the indebtedness on schedule F as undisputed while in this

case Ms. Rehman listed each and every claim objected to in her omnibus objection as

disputed on Schedule F. As a result, I ordered Ms. Rehman to file an affidavit setting

forth the basis upon which she disputed each schedule F claim.

On August 3, 2012, Ms. Rehman filed her affidavit. Instead of stating the basis for

disputing each schedule F claim, Ms. Rehman's affidavit sets forth the basis for disputing

the claims related only to the proofs of claim included in her omnibus objection— not

quite the same thing but close enough. A sufficiently consistent pattern emerges from the

testimony set forth in Ms. Rehman's affidavit to establish that the following occurred.

Prior to completion of her bankruptcy schedules, Ms. Rehman had among her financial

records copies of monthly billing statements for each of her unsecured debts.[3] Most

statements were not for the current month. A credit report obtained on her behalf by her

attorney listed the same debts with the exception of the one to Home Depot. In every

instance save one, the balances as listed on the credit report and in Ms. Rehman's

statements were within $150 of each other. In the case of Macy's (claim #6) the

difference was about $500. Despite having both the account statements and the credit

report, Ms. Rehman did not believe she had sufficient documentation to determine the

amount she owed her creditors. She, therefore, caused her attorney to complete schedule

F by listing each debt in the amount as between her account statements and the credit

report which was the greater, and disputing them all with the exception of the debt owed

to her dentist.

---

[3] Excluded from this discussion are her two tax-related unsecured debts.

Based on Ms. Rehman's affidavit, I now proceed to rule on the remaining objections in her omnibus objection to claims. As indicated previously, with the exception of eCAST, no creditor has seen fit to respond to the debtor's objection.

To begin with, it is important to remember that the packaging and selling in bulk of defaulted credit card and retail accounts to debt buyers has in recent years become a growth industry.[4] In addition, many large merchants and lending institutions have engaged affiliates or servicing companies to handle collection of defaulted accounts on their behalf. The result has been that when account debtors file bankruptcy, the proofs of claim being filed in their cases are by parties, often unknown to the debtors, describing themselves as assignees, successors in interest, agents, servicers and the like.[5] Documentation supporting such proofs of claim is often limited to a one or two page account summary. This in turn has led debtors to object to such claims either because the claim holder has failed to establish its standing to assert the claim or because the claim holder has failed to accompany the claim with sufficient supporting documentation. In many cases the very claim to which the debtor has objected is listed on the debtor's

---

[4] "The most significant change in the debt collection business in the past decade, however, has been the advent and growth of debt buying (i.e., the purchasing, collecting, and reselling of debts in default)." FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE, WORKSHOP REPORT iv, (February 2009) *available at* www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

[5] In its Report to the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, the Advisory Committee on Bankruptcy Rules cited concerns regarding proofs of claim filed by bulk purchasers of debt as a consideration for the 2011 amendments to Rule 3001. "They [consumer bankruptcy lawyers and trustees] recounted their frustrating experiences in dealing with bare proofs of claim filed by bulk purchasers of credit card debt. They said that claims often failed to comply with existing documentation requirements and that it was impossible to determine how the claim amounts were calculated. Furthermore, they argued, when additional information was sought, claimants frequently failed to respond until an objection was filed, at which point they either withdrew their claims or belatedly provided information that should have been attached to the proof of claim." Advisory Committee on Bankruptcy Rules Report to the Standing Committee on Rules of Practice and Procedure, June 14, 2010, *available at* http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/PendingRules/SupremeCourt042611.aspx.

schedule F in an identical or almost identical amount with a reference to the identical

account number, but in the name of the original creditor.

In Ms. Rehman's omnibus objection, aside from raising certain creditors' lack of

standing, the common thread binding all her objections is first, that a one page account

detail attached to each proof of claim does not satisfy the requirements of the Bankruptcy

Rules nor does it enable her to determine "how the alleged debt was incurred, what

amounts comprise the principal, interest, late fees, etc., what services were provided in

consideration, or what payments may have been credited to the account" and second, that

since each claim is based on a writing, under the Rules, the original or a duplicate of the

writing was supposed to have been filed with the proof of claim.[6]

Even though Rule 3001(c) requires that when a claim is based on a writing, the

writing must accompany the proof of claim, the failure to include the writing or for that

matter any backup documentation is not grounds for disallowance of the claim. *In re*

*MacFarland*, 462 B.R. 857, 881 (Bankr. S.D. Fla. 2011). Rather, it deprives the proof of

claim of the prima facie validity accorded it by Rule 3001(f). *In re Long*, 353 B.R. 1, 13

(Bankr. D. Mass. 2006). Ordinarily this means that upon an objection to the proof of

claim, the burden remains with the creditor to prove the claim's validity. *Id.* However,

this presupposes that the claim objection may be asserted in the first place. In certain

---

[6] Further amendments to Fed. R. Bank. P. 3001, to take effect on December 1, 2012, are intended to standardize the proofs of claim and supporting documentation filed by assignees, and hopefully put an end to the steady stream of claim objections that have resulted from the bulk sale of credit card accounts. "The future revision adds a new Rule 3001(c)(3) applicable specifically to open-ended credit agreements like the claims at issue here. It will remove open-ended credit agreements entirely from the Rule 3001(c)(1) documentation requirement and substitute a requirement specifically tailored to open-ended credit arrangements. The claimant will be required to provide a statement that, among other information, provides the name of the entity from whom the creditor purchased the account and the name of the entity to whom the debt was owed at the time of the debtor's last account transaction." *In re Richter*, 11-36558 MER, 2012 WL 3763657 *11 (Bankr. D. Colo. Aug. 29, 2012) *citing* Fed. R. Bankr. P. 3001(c) [effective December 1, 2012, absent contrary Congressional action].

instances a debtor may be estopped from objecting to a claim, for example, when in a

pleading filed by the debtor in the case she has acknowledged the claim's validity. *In re*

*Reynolds*, 470 B.R. 138, 145 (Bankr. D. Colo. 2012); *see also MacFarland,* 462 B.R. at

881 and 882.

Bankruptcy Code § 502(b) enumerates nine grounds for the disallowance of a

proof of claim. These grounds are exclusive. *MacFarland*, 462 B.R. at 879-80. Since the

failure to attach a writing as required by Rule 3001(c) is not one of the enumerated

grounds, it is not in and of itself a basis for disallowance of a claim. *Id.* at 880. However,

§ 502(b)(1) provides for the disallowance of a claim to the extent such claim is

unenforceable under applicable law. Therefore, if under applicable state law a claim may

not be enforced unless it is accompanied by documentation or evidence of standing, §

502(b)(1) provides a basis for disallowance.

I have previously held that to avoid disallowance under Bankruptcy Code §

502(b)(1) a claim must be presented in a manner that were it brought as a complaint in

state court, it would survive a motion to dismiss. *Gauthier*, 459 B.R. at 527. Thus a proof

of claim for credit card charges that includes an account summary but does not include a

copy of the credit card agreement will survive a § 502(b)(1) objection because under

Massachusetts law a collection complaint in state court need not include a copy of that

agreement.[7] Likewise, a proof of claim filed by an assignee of the original creditor which

---

[7] Claims for goods sold and delivered, for money lent, and for collection of accounts are examples of
"common counts" emanating from the common law action of assumpsit. 17 MPS. Prima Facie Case,
Bishop § 3.1 (5th ed.). The common counts were codified in Massachusetts in MASS. GEN. LAWS ch. 231,
§147, along with recommended forms of complaints. The statute was repealed in 1975 and replaced by the
Massachusetts Rules of Civil Procedure, specifically Rules 8 and 84. "The Massachusetts Rules of Civil
Procedure do not specifically refer to the 'common counts,' but Rule 8(a)(1) providing for a 'short and
plain statement of the claim showing that the pleader is entitled to relief' plainly does so by implication. In
addition, the official forms published with the rules include forms for an account annexed, goods sold and
delivered, money lent, money paid by mistake, and money had and received." 17 MPS. Prima Facie Case,

6

contains some evidence or certification of the assignment may not be disallowed for lack

of standing because a verified complaint to that effect in state court would survive a

motion to dismiss. *Id.*

It is important to note that a claimant who is a successor in interest or an agent of

the original creditor should not be held to the same standard regarding standing as an

assignee.

> "[The term 'successor'] means, ordinarily in the case of a corporation,
> another corporation which by a process of amalgamation, consolidation, or
> duly authorized legal succession has become invested with the rights and
> has assumed the burdens of the first corporation." *Hanna v. Florence Iron
> Co.,* 222 N.Y. 290, 118 N.E. 629, 631-632 (1918). "[A] legal assignment
> is a transfer or setting over of property, or of some right or interest therein,
> from one person to another, and unless in some way qualified, it is
> properly the transfer of one whole interest in an estate, chattel, or other
> thing." (Punctuation and citation omitted). *Hunter-Wilson Distilling Co. v.
> Foust Distilling Co.,* 84 F. Supp. 996, 1000 (M.D.Pa.1949). Clearly, the
> words "successors" and "assigns" have different meanings.

*S. Patrician Associates v. Int'l Fid. Ins. Co.*, 191 Ga. App. 106, 381 S.E.2d 98, 99
(1989).

Thus an assignment involves a transfer of rights to property and someone who shows up

claiming to own those rights must be prepared to establish his position in the chain of

ownership. Successors in interest and agents on the other hand merely assert rights as

proxies of the original owner of the property. Their standing is a question of status and

authority while an assignee's is one of property rights.

> "A successor in interest is 'one who follows another in ownership or
> control of property. A successor in interest retains the same rights as the
> original owner, with no change in substance.'"

*Fontes v. HSBC Bank* (*In re Fontes),* BAP AZ-10-1345, 2011 WL 3300933, at *5
(B.A.P. 9th Cir. Apr. 22, 2011) (internal citations omitted) (unpublished).

---

Bishop § 3.1 (internal citations omitted). The proofs of claim at issue in this case would easily satisfy the
requirements of the Massachusetts Rules of Civil Procedure had they been recast as complaints.

7

I have overruled unopposed objections by debtors to proofs of claim by assignees

where the objections were based solely on the assignees' lack of standing, as long as the

assignees submitted some evidence of assignment along with the proofs of claim, for

example, a certification by a representative of the assignee sworn to under the pains and

penalties of perjury. I view this as the equivalent of a verified complaint under state law

which is sufficient to establish an assignee's standing in the face of a motion to dismiss.[8]

In similar circumstances involving claims made by successors in interest or agents, I have

overruled unopposed objections by debtors based on standing even without requiring

evidence of standing because successors in interests and agents are presumed to have

standing with respect to proofs of claim.[9] Rule 9010(c) of the Federal Rules of

Bankruptcy Procedure provides that "[t]he authority of any agent, attorney in fact, or

proxy to represent a creditor for any purpose *other than the execution and filing of a*

*proof of claim* or the acceptance or rejection of a plan shall be evidenced by a power of

attorney conforming substantially to the appropriate Official Form" (emphasis added).[10]

A critical factor in reaching the decision in previous cases to overrule a claim

objection to which the creditor has not filed an opposition has been the debtor's

scheduling as undisputed the same claim thereby subjecting the debtor to the application

---

[8] [A verified complaint] "is therefore treated as an affidavit in so far as it contains specific facts that the signer knows to be true." *Pupecki v. James Madison Corp.*, 376 Mass. 212, 217 (1978). *See also Cannata v. Berkshire Natural Res. Council, Inc.*, 73 Mass. App. Ct. 789, 792 (2009) "Only if the plaintiff files a verified complaint is the complaint treated as an affidavit for purposes of [Mass.R.Civ.P. 56 ]." (*quoting Harrison v. Boston Financial Data Servs., Inc.,* 37 Mass. App. Ct. 133, 136 n. 9 (1994)).

[9] "[The] Bankruptcy Code and Fed. R. Civ. P. 17 each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances." *In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) (*quoting In re Conde–Dedonato,* 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008)).

[10] This Rule conflicts with the current version of Official Form 10, the proof of claim form, in that the official form requires a creditor's agent to attach a power of attorney. The 2012 amendment to Official Form 10, which will take effect December 1, 2012, deletes the power of attorney requirement.

8

of the doctrine of judicial estoppel so as to negate the objection.[11] Judicial estoppel is "a

common law doctrine by which a party who has assumed one position in his pleadings

may be estopped from assuming an inconsistent position. Because the doctrine is

intended to protect the judicial system, rather than the litigants, detrimental reliance by

the opponent of the party against whom the doctrine is applied is not necessary." *Jethroe

v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (*quoting Browning v. Mims*,

179 F.3d 197, 205 (5th Cir. 1999)). Based on this reasoning it would seem to follow that

the scheduling of a claim as disputed should preclude the invocation of judicial estoppel

thereby requiring the creditor to come forward to prove its claim in response to an

objection.

In this case Ms. Rehman disputed all the debts listed on schedule F arising from

credit card or retail installment purchases. According to her affidavit, the reason for

disputing each of these debts was the same. Despite having a statement of account and a

credit report listing all but one of the debts, she did not believe she had sufficient

documentation to determine the amount she owed.

The debtor's explanation for why she disputed each and every credit card and

retail installment debt she owes defies logic. Her own financial records established those

debts. A credit report obtained on her behalf supported her records. Perhaps she was not

entirely certain of the exact amount owed. In that case the proper course would have been

---

[11] *Reynolds*, 470 B.R. at 145. Other courts have determined that the schedules may constitute admissions under Rule 801(d) of the Federal Rules of Evidence. "Generally, a bankruptcy court may properly consider a debtor's petition, schedules and statement of affairs as evidentiary admissions made by the debtor. *See* Federal Rules of Evidence 801(d)(2)... [A] debtor's schedules may be admissible as nonhearsay evidence to establish the validity and ownership of a claim against a debtor when the debtor is the party objecting to the claim." *In re Plourde*, 418 B.R. 495, 505 n. 13 (B.A.P. 1st Cir. 2009); *see also In re Heath*, 331 B.R. 424, 431 (B.A.P. 9th Cir. 2005). Not all courts have been willing to hold debtors to the positions taken in their schedules when claim disputes arise. For a review of the cases and the various approaches taken by the courts on this issue, *see Minbatiwalla*, 424 B. R. at 117.

to list the amount of the debt as uncertain, or better still, to list an amount the debtor in good faith believed she owed.

Debtors are expected to have a basic knowledge of their liabilities and to disclose them truthfully and accurately on the schedules accompanying their bankruptcy petitions. Indeed, a debtor who fails to maintain records from which her financial condition or business transactions may be ascertained is not entitled to a discharge. *See, e.g.,* Bankruptcy Code § 727(a)(3).

Ms. Rehman submitted a chapter 13 plan in which she proposed to pay her general unsecured creditors 100% of their claims. It was, therefore, in her direct financial interest to minimize the allowed amount of those claims. It is reasonable to conclude that Ms. Rehman, or more likely her counsel, anticipated that many of the proofs of claim relating to credit card and retail installment debt would be filed by assignees or without extensive documentary support (or both) and that many of these claimants would not bother to respond to the debtor's omnibus objection. By scheduling all her credit card and retail debt as disputed, it may be assumed that Ms. Rehman sought to enhance the effect of any objection she might later file to a creditor's proof of claim by trying to sidestep the application of the doctrine of judicial estoppel which would ordinarily come into play in this context. In finding blanket claim objections when the debts were scheduled as undisputed to be a violation of Rule 9011, the court in *MacFarland* observed that "the Court's bar to raising objections to claims scheduled as undisputed should not be read as an invitation to schedule credit card debts as disputed in hopes of shifting the burden back to the creditor." *MacFarland*, 462 B.R. at 880 (*quoting In re Moreno*, 341 B.R. 813, 818 (Bankr. S.D. Fla. 2006)); *see also Minbatiwalla,* 424 B.R. at 116. Debtor's intent to

"amend schedules was 'disingenuous,' 'smacks of manipulation,' and raised 'issues of

bad faith.'" (*citing In re Cluff*, 313 B.R. 323, 340 (Bankr. D. Utah 2004) *aff'd sub nom.*

*Cluff v. eCast Settlement*, 2:04-CV-978 TS, 2006 WL 2820005 (D. Utah Sept. 29, 2006)).

The across-the-board disputing on a debtor's schedules of debts which the debtor

knows or should know she owes, as part of a strategy to minimize the amount she will

have to pay under a chapter 13 plan, is an abuse of the bankruptcy process. In this case it

also a waste of time. That is because Ms. Rehman's affidavit, in which she explains the

basis upon which she disputed all the claims, is actually an admission by her that in fact

she knew the amount of those claims. Thus Ms. Rehman's attempt to avoid subjecting

herself to judicial estoppel by checking the "disputed" box on her schedules is negated by

her subsequent affidavit.

Applying the standards of Bankruptcy Code § 502 and Rule 3001 to the objected-

to proofs of claim where the debtor is estopped from disputing the claims as scheduled, I

hereby ORDER as follows:

> Claim #2 – OBJECTION OVERRULED. The Court takes judicial notice of Bank
> of America's 2006 Form 10-K filed with the Securities and Exchange
> Commission and concludes that FIA Card Services is the successor in interest to
> Bank of America and not an assignee.  Claim #2 is allowed as a general unsecured
> claim in the amount of $2950.43 (the claim amount, which is lower than the
> scheduled amount).

> Claim #3 - OBJECTION OVERRULED. Dell Financial is the creditor on the
> proof of claim signed by Resurgent Capital Services as servicing agent and is also
> the creditor named on the debtor's schedules. Claim #3 is allowed in the amount
> of $2464.30 (the claim amount, which is lower than the scheduled amount).

> Claim #5 - OBJECTION OVERRULED.  Discover Bank is the creditor on the
> proof of claim and on the debtor's schedules. The claim is allowed in the amount
> of $12,899.31 (the claim amount, which is lower than the scheduled amount).

> Claim #6 – OBJECTION OVERRULED IN PART. Macy's is the creditor on the
> proof of claim signed by NCO Financial Systems as service provider and is also

the creditor named on the debtor's schedules. Based on the creditor's failure to respond to the objection, claim #6 is allowed in the amount of $1637.41, the amount scheduled by the debtor (which is lower than the claim amount).

Claim #7 – OBJECTION OVERRULED. GE Money Bank is the creditor on the proof of claim signed by B-Line LLC on its behalf  and is the creditor named on the debtor's schedules. Claim #7 is allowed in the amount of $107.18 (the claim amount, which is lower than the scheduled amount).

Claim #11 – OBJECTION SUSTAINED. The claim is filed by Capital One, NA with no evidence of the relationship between Capital One and Kohl's which is the creditor listed on the debtor's schedules. Claim #11 is disallowed and expunged.

Claim #13 – OBJECTION OVERRULED IN PART.  World Financial Network National Bank is the creditor on the proof of claim and is listed on the debtor's schedules as "WFNNB." Based on the creditor's failure to respond to the objection, claim #13 is allowed in the amount of $677, the amount scheduled by the debtor (which is lower than the claim amount).

Claim #16 – OBJECTION SUSTAINED. The claim is filed by Candica, LLC with no evidence of the relationship between Candica and Capital One which is the creditor listed on the debtor's schedules. Claim #16 is disallowed and expunged.

Claim #17 – OBJECTION SUSTAINED.  The claim is filed by Candica, LLC with no evidence of the relationship between Candica and Capital One which is the creditor listed on the debtor's schedules. Claim #17 is disallowed and expunged.

Claim #18 – OBJECTION SUSTAINED.  While Portfolio Recovery Associates LLC describes itself as the successor in interest to Citibank on the proof of claim, the documentation attached to the claim indicates Portfolio Recovery Associates purchased Citibank's claim meaning it is an assignee.  Since there is no sworn certification or other evidence of assignment, Claim #18 is disallowed and expunged.

Claim #19 – OBJECTION SUSTAINED.  While Portfolio Recovery Associates LLC describes itself as the successor in interest to Citibank on the proof of claim, the documentation attached to the claim indicates Portfolio Recovery Associates purchased Citibank's claim meaning it is an assignee.  Since there is no sworn certification or other evidence of assignment, Claim #19 is disallowed and expunged.

SO ORDERED.

At Worcester, Massachusetts this 5th day of October, 2012.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Dmitry Lev
Watertown, MA
For Kelly A. Rehman, Debtor

Philip Stone
Worcester, MA
For eCast Settlement Corporation, Creditor